1   GIBSON, DUNN & CRUTCHER LLP
    DENIS R. SALMON, SBN 072500
2   MICHAEL B. SMITH, SBN 235764
    JOSEPH W. GUZZETTA, SBN 233560
3   1881 Page Mill Road
    Palo Alto, California 94304
4   Telephone: (650) 849-5300
    Facsimile: (650) 849-5333
5
    Attorneys for Defendant
6   ECLIPSYS CORPORATION

7

8                   UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  REVOLUTIONARY SOFTWARE, INC., a          CASE NO. C-05-03127 JW
    California Corporation
12                                           **DEFENDANT ECLIPSYS**
                    Plaintiff,               **CORPORATION'S**
13
         v.                                  **(1) ANSWER TO SECOND AMENDED**
14                                           **COMPLAINT FOR BREACH OF**
    ECLIPSYS CORPORATION, a Delaware         **CONTRACT, BREACH OF COVENANT**
15  Corporation                              **OF GOOD FAITH AND FAIR DEALING,**
                                             **AND COMMON COUNTS;**
16                  Defendant.
                                             **AND**
17
                                             **(2) COUNTERCLAIMS FOR FRAUD,**
18  ECLIPSYS CORPORATION, a Delaware         **NEGLIGENT MISREPRESENTATION,**
    Corporation                              **MISTAKE, UNFAIR COMPETITION AND**
19                                           **BUSINESS PRACTICES, BREACH OF**
                    Counterclaimant,         **CONTRACT, AND BREACH OF**
20                                           **COVENANT OF GOOD FAITH AND FAIR**
         v.                                  **DEALING**
21
    REVOLUTIONARY SOFTWARE, INC.,
22
                    Counterdefendant.
23

24          Defendant and Counterclaimant Eclipsys Corporation ("Eclipsys", or "Counterclaimant"), for

25  itself alone and no others, in answer to the Second Amended Complaint of Plaintiff and

26  Counterdefendant Revolutionary Software, Inc. ("RSW", "Counterdefendant" or "Plaintiff")

27  ("Complaint"), admits, denies, and alleges as follows:

28

                                    1

**FIRST CAUSE OF ACTION:**
**BREACH OF CONTRACT**

1.      Eclipsys is informed and believes that Plaintiff Revolutionary Software, Inc., ("RSW") is a corporation organized and existing under the laws of the State of California and is qualified to do business in California.  Eclipsys is without knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 1, and on that basis denies the remaining allegations of Paragraph 1.

2.      Eclipsys admits that Eclipsys Corporation is a Delaware corporation.  Eclipsys is without knowledge or information sufficient to form a belief as to the allegations regarding Plaintiff's knowledge, beliefs, or future actions, and on that basis denies those allegations.  Except as expressly admitted herein, Eclipsys denies the allegations of Paragraph 2.

3.      Paragraph 3 of the Complaint contains certain conclusions of law to which an answer is not required.  Eclipsys admits that Plaintiff filed the complaint in Superior Court, County of Santa Cruz, on or about June 22, 2005.  Eclipsys admits that Eclipsys removed the case to U.S. District Court in August 2005, and that both parties consented to San Jose assignment in November 2005. Except as expressly admitted herein, and to the extent any further answer is required, Eclipsys denies the allegations of Paragraph 3.

4.      Paragraph 4 of the Complaint contains certain conclusions of law to which an answer is not required.  To the extent an answer is required, Eclipsys denies the allegations of Paragraph 4.

5.      Eclipsys denies that RSW was incorporated in 1988.  Based upon documents provided to Eclipsys by RSW, Eclipsys believes and on that basis alleges that RSW was incorporated on April 18, 1989.  Eclipsys admits that the software program "/rdb" includes subroutines that enable users to insert and retrieve database information.  Eclipsys is without knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 5, and on that basis denies the remaining allegations of Paragraph 5.

6.      Paragraph 6 of the Complaint contains certain conclusions of law to which an answer is not required.  Eclipsys admits that on or about February 8, 1993, RSW entered into a Software License Agreement (the "RSW-Emtek License") with Emtek Health Care Systems ("Emtek"), an

1   Arizona corporation and a subsidiary of Motorola, a Delaware corporation.  Eclipsys admits that

2   Exhibit A to the Complaint appears to be a copy of the RSW-Emtek License.  Eclipsys respectfully

3   refers the Court to the RSW-Emtek License for the contents and legal effect thereof.  Except as

4   expressly admitted herein, and to the extent any further answer is required, Eclipsys denies the

5   allegations of Paragraph 6.

6          7.      Certain allegations in Paragraph 7 are vague, ambiguous, and unintelligible, and

7   Eclipsys is unable to admit or deny those allegations.  Eclipsys respectfully refers the Court to the

8   RSW-Emtek License for the contents and legal effect thereof.  Eclipsys admits that, after February

9   1993, /rdb was a component of each Clinical Information Management System sold by Emtek.

10  Eclipsys admits that Emtek had customers in the U.S., Canada, Europe, Asia, and Australia and New

11  Zealand.  Except as expressly admitted herein, Eclipsys denies the allegations of Paragraph 7.

12         8.      Eclipsys admits that, based upon false representations by Counterdefendant RSW that

13  RSW owned all rights to /rdb, Emtek paid RSW $51,976 for the right to use and distribute /rdb prior

14  to the execution of the Emtek-RSW License in 1993.

15         9.      Certain allegations in Paragraph 9 are vague, ambiguous, and unintelligible, and

16  Eclipsys is unable to admit or deny those allegations.  Eclipsys admits that Exhibit B to the

17  Complaint appears to be a copy of Amendment No. 1 to the RSW-Emtek License executed on or

18  about October 10 or 11, 1995.  Eclipsys respectfully refers the Court to the Amendment for the

19  contents and legal effect thereof.  Except as expressly admitted herein, and to the extent any further

20  answer is required, Eclipsys denies the allegations of Paragraph 9.

21         10.     Eclipsys admits that between February of 1993 and January of 1998, in reliance upon

22  the false representations of Counterdefendant RSW, Emtek paid RSW $171,120 for the right to use

23  and distribute /rdb.

24         11.     Eclipsys admits that on or about January 30, 1998, Emtek Healthcare Corporation, a

25  subsidiary of Eclipsys, acquired substantially all the assets of the Emtek Healthcare Division of

26  Motorola, Inc.  The remaining allegations of Paragraph 11 are conclusions of law to which no answer

27  is required.  Except as expressly admitted herein, and to the extent any further answer is required,

28  Eclipsys denies the allegations of Paragraph 11.

3

12.     Eclipsys admits that on or about January 30, 1998, Emtek Healthcare Corporation entered into an International Software and Support Agreement with Motorola, Inc., under which Emtek Healthcare Corporation agreed to provide certain software and support to international customers of the Emtek Healthcare Division of Motorola, Inc.  Eclipsys admits that on or about March 27, 1998, it entered into a Remarketing Agreement with Nippon Motorola, Limited, to remarket exclusively in Japan Eclipsys products, including the Emtek products.  Eclipsys admits that on or about December 6, 1998, it entered into a Maintenance Agreement with Siemens-Elema AB for maintenance and support of Eclipsys's Continuum 2000 software products, and marketing and sublicensing of Eclipsys's software, to a list of eleven existing customers, all of which were in Germany.

13.     Eclipsys states that Paragraph 13 of the Complaint contains certain conclusions of law to which an answer is not required, and respectfully refers the Court to the RSW-Emtek License for the contents and legal effect thereof.  Eclipsys admits that it provided Plaintiff with regular reports of new sales of copies of software containing Plaintiff's /rdb program, including in 2000, 2002, and 2004.  Except as admitted herein, and to the extent any answer is required, Eclipsys denies the allegations of Paragraph 13.

14.     Eclipsys states that Paragraph 14 of the Complaint contains certain conclusions of law to which an answer is not required, and respectfully refers the Court to the RSW-Emtek License for the contents and legal effect thereof.  Except as expressly admitted herein, and to the extent any answer is required, Eclipsys denies the allegations of Paragraph 14.

15.     Eclipsys admits that Emtek had approximately 60 customers in 1998.  Except as expressly admitted herein, Eclipsys denies the allegations of Paragraph 15.

16.     Eclipsys admits that it used the "Continuum 2000" name in 1998 and early 1999 to refer to the critical care software it had acquired from Emtek.  Eclipsys denies the remaining allegations of Paragraph 16.

17.     Eclipsys states that Paragraph 17 of the Complaint contains certain conclusions of law to which an answer is not required, and respectfully refers the Court to the RSW-Emtek License for the contents and legal effect thereof.  Eclipsys admits that a letter from Mr. Brent Friedman,

4

1    Eclipsys's General Counsel, to Mr. Evan Schaffer, dated March 28, 2005, contains the statement

2    "Eclipsys has used the Revolutionary software in the context of its Sunrise Critical Care product,

3    which Eclipsys has not sold since 1999." Eclipsys is without knowledge or information sufficient to

4    form a belief as to the allegations in Paragraph 17 regarding the contents of particular unspecified

5    business reports, trade journals, or newspapers, but admits that some of Eclipsys's customers have

6    used Eclipsys's Continuum 2000, Sunrise Critical Care, and/or Sunrise Clinical Manager products.

7    Eclipsys further states that the terms "Sunrise Critical Care" and "SCC" are used by Eclipsys and its

8    customers to refer to both the Emtek CIMS and to Eclipsys's own proprietary critical care software,

9    which does not incorporate the Licensed Software. Eclipsys admits that Exhibit A to the Software

10   License Agreement contains the statement "install the '/rdb' product in each clinical workstation

11   distributed to its customer base as per the terms of this Agreement." Eclipsys respectfully refers the

12   Court to the RSW-Emtek License for the legal effect thereof. Eclipsys admits that it continues to

13   support clinical information management systems that use /rdb. Except as expressly admitted herein,

14   and to the extent any further answer is required, Eclipsys denies the allegations of Paragraph 17.

15         18.    Eclipsys states that Paragraph 18 of the Complaint contains certain conclusions of law

16   to which an answer is not required, and respectfully refers the Court to the RSW-Emtek License for

17   the contents and legal effect thereof. To the extent an answer is required, Eclipsys admits the

18   allegations of Paragraph 18.

19         19.    Eclipsys states that Paragraph 19 of the Complaint contains certain conclusions of law

20   to which an answer is not required, and respectfully refers the Court to the RSW-Emtek License for

21   the contents and legal effect thereof. Eclipsys admits that the document bearing the title

22   "Revolutionary Sales since last royalty report in 1Q 2000" contains the column heading "Number of

23   SCC UNIX Hosts," and the statement "Workstations are equivalent to UNIX servers." Eclipsys

24   admits that the document bearing the title "Revolutionary Sales since last royalty report in 1Q 2000"

25   contains a correction to "Previous reporting in 2000." Except as expressly admitted herein, and to the

26   extent any further answer is required, Eclipsys denies the allegations of Paragraph 19.

27         20.    Eclipsys admits that Eclipsys's report on Form 10-K for the period ended December

28   31, 2004, and filed with the Securities and Exchange Commission on March 16, 2005, states that

1   "[w]e have one or more of our software applications installed in, or licensed to be installed at,

2   approximately 1,500 facilities."  Eclipsys further admits that since acquiring Emtek in January 1998

3   Eclipsys has paid RSW at least $61,706 for the right to use and distribute /rdb.  Except as expressly

4   admitted herein, and to the extent any further answer is required, Eclipsys denies the allegations of

5   Paragraph 20.

6        21.     Eclipsys states that Paragraph 21 of the Complaint contains certain conclusions of law

7   to which an answer is not required.  To the extent an answer is required, Eclipsys denies the

8   allegations of Paragraph 21.

9        a.     Eclipsys states that Paragraph 21(a) of the Complaint contains certain

10   conclusions of law to which an answer is not required.  Eclipsys admits that it

11   sold its foreign subsidiaries, Eclipsys Limited and Eclipsys Australia Pty

12   Limited, to iSOFT Group Limited ("iSOFT") on or about May 29, 2001.

13   Eclipsys is without knowledge or information sufficient to form a belief as to

14   iSOFT's marketing materials, and on that basis denies those allegations.

15   Eclipsys respectfully refers the Court to the RSW-Emtek License for the

16   contents and legal effect thereof.  Eclipsys admits that the acquisition of its

17   foreign subsidiaries by iSOFT was publicly announced.  Eclipsys admits that

18   the document bearing the title "Revolutionary Sales since last royalty report in

19   1Q 2000" has an entry for "Isoft plc," with "2" in the column for "Number of

20   SCC UNIX Hosts" and "$60" in the column for "Royalties Due."  Except as

21   expressly admitted herein, and to the extent any further answer is required,

22   Eclipsys denies the allegations of Paragraph 21(a).

23        b.     Eclipsys states that Paragraph 21(b) of the Complaint contains certain

24   conclusions of law to which an answer is not required.  Eclipsys admits that it

25   has provided service and support to some former customers of Emtek in Japan,

26   Germany, and other countries.  Eclipsys respectfully refers the Court to the

27   royalty reports and the Emtek-RSW License for the contents and legal effect

28

6

1   thereof.  Except as expressly admitted herein, Eclipsys denies the allegations of

2   Paragraph 21(b).

3   c.   Eclipsys states that Paragraph 21(c) of the Complaint contains certain

4   conclusions of law to which an answer is not required.  Eclipsys is without

5   knowledge or information sufficient to form a belief as to Plaintiff's

6   investigations or discoveries, and on that basis denies those allegations.

7   Except as expressly admitted herein, and to the extent any further answer is

8   required, Eclipsys denies the allegations of Paragraph 21(c).

9   22.   Eclipsys states that Paragraph 22 of the Complaint contains certain conclusions of law

10   to which an answer is not required, and respectfully refers the Court to the RSW-Emtek License for

11   the contents and legal effect thereof.  Eclipsys admits that a letter dated January 14, 2005, purportedly

12   from Mr. Schaffer, addressed to Mr. Robert Colletti, Eclipsys's Chief Financial Officer, contains the

13   statement  ". . . we are hereby informing you that we will be exercising our right to obtain an audit . .

14   . ."  Eclipsys admits that a letter dated February 8, 2005, purportedly from Mr. Schaffer, addressed to

15   Mr. Colletti, contains the statement "Who from Eclipsys can we contact to arrange the audit of your

16   sales and royalty records?"  Eclipsys admits that a letter dated March 1, 2005, purportedly from Mr.

17   Schaffer, addressed to Mr. Paul Ruflin, Eclipsys's President, contains the statements "Eclipsys is in

18   material breach of the Software License Agreement.  Revolutionary Software requests that Eclipsys

19   cure the breach and proceed with the audit."  Eclipsys admits that Mr. Friedman attempted to contact

20   Mr. Schaffer.  Eclipsys admits that a letter dated March 25, 2005, purportedly from Mr. Schaffer,

21   addressed to Mr. Friedman, contains the statements "Our contract stipulates that an audit is the way

22   to resolve accounting issues.  You can assist by providing a contact person at Eclipsys who can help

23   make the necessary arrangements."  Except as expressly admitted herein, and to the extent any further

24   answer is required, Eclipsys denies the allegations of Paragraph 22.

25   23.   Eclipsys states that Paragraph 23 of the Complaint contains certain conclusions of law

26   to which an answer is not required, and respectfully refers the Court to the RSW-Emtek License for

27   the contents and legal effect thereof.  Eclipsys admits that Plaintiff submitted an invoice on or about

28   August 17, 2004, the amount of which it subsequently claimed to dispute.  Eclipsys admits that it

7

1    paid the full amount owed as of, and reflected in, its August 6, 2004 letter and report, in a good faith

2    effort to resolve Plaintiff's concerns over the amount of its August 17, 2004 invoice.  Eclipsys admits

3    that on September 27, 2004, Plaintiff purported to bill Eclipsys a $77.40 "Finance Charge."  At this

4    time, Eclipsys lacks knowledge or information sufficient to form a belief as to the allegations

5    regarding any November 2, 2004 communication from Eclipsys's assistant controller, and on that

6    basis denies those allegations.  Eclipsys admits that a letter dated January 14, 2005, purportedly from

7    Mr. Schaffer, addressed to Mr. Colletti, contains the statement "We request that you provide us with:

8    . . . 2. payment of the $89.55 in late charges previously billed."  Eclipsys admits that a letter dated

9    February 8, 2005, purportedly from Mr. Schaffer, addressed to Mr. Colletti, contains the statement

10   "When can we expect to receive the $89.55 in late charges still owed to us?"  Eclipsys admits that a

11   letter dated March 1, 2005, purportedly from Mr. Schaffer, addressed to Mr. Ruflin, contains the

12   statement ". . . issues remaining unresolved are: 1. unpaid late charges. . . ."  Eclipsys admits that it

13   has not paid the purported $89.55 that Plaintiff contends is due, but denies that any such late fees are

14   appropriately charged.  Except as expressly admitted herein, and to the extent any further answer is

15   required, Eclipsys denies the allegations of Paragraph 23.

16        24.    Eclipsys states that Paragraph 24 of the Complaint contains certain conclusions of law

17   to which an answer is not required, and respectfully refers the Court to the RSW-Emtek License for

18   the contents and legal effect thereof.  To the extent an answer is required, Eclipsys denies the

19   allegations of Paragraph 24.

20        25.    Eclipsys admits that the Software Deposit Agreement ("SDA") entered into by RSW,

21   Emtek, and Brambles, NSD, Inc. is attached to the Complaint as Exhibit D.  Eclipsys states that

22   Paragraph 25 of the Complaint contains certain conclusions of law to which an answer is not

23   required, and respectfully refers the Court to the SDA for the contents and legal effect thereof.  To

24   the extent any further answer is required, Eclipsys denies the allegations of Paragraph 25.

25        26.    The allegations in Paragraph 26 pertain to claims that this Court dismissed on March

26   30, 2007 (*see* Docket No. 74) and need not be admitted or denied.  To the extent any further answer is

27   required, Eclipsys states that is without knowledge or information sufficient to form a belief as to the

28

1   allegations in Paragraph 26 regarding Plaintiff's interactions regarding DSI Technology Escrow

2   Services and otherwise denies the allegations of Paragraph 26.

3          27.     Eclipsys states that Paragraph 27 of the Complaint contains certain conclusions of law

4   to which an answer is not required, and respectfully refers the Court to the RSW-Emtek for the

5   contents and legal effect thereof.  Eclipsys admits that an article in the May 2004 issue of .NET

6   Developers Journal quotes John Gomez as having said:

> Our clinical documentation system is a rewrite of our Sunrise Critical Care system,
> which was an AIX platform and is now 100% .NET.  The original system took years
> to write.  With .NET we wrote it from the ground up in a little over a year and added
> more features and functionality than the original system.  That product is set to ship in
> June.

10  Eclipsys admits that it did not seek consent to change the licensed software, but denies that any

11  changes were made that would require such consent.  Except as expressly admitted herein, and to the

12  extent any further answer is required, Eclipsys denies the allegations of Paragraph 27.

13         28.     Eclipsys states that Paragraph 28 of the Complaint contains certain conclusions of law

14  to which an answer is not required, and respectfully refers the Court to the RSW-Emtek License for

15  the contents and legal effect thereof.  Eclipsys admits that it sold its foreign subsidiaries, Eclipsys

16  Limited and Eclipsys Australia Pty Limited to iSOFT on or about May 29, 2001, and Eclipsys admits

17  that the sale on or about May 29, 2001 was publicly disclosed.  Eclipsys respectfully refers the Court

18  to the May 29, 2001 agreement between Eclipsys and iSOFT for the contents and legal effect thereof.

19  Except as expressly admitted herein, and to the extent any further answer is required, Eclipsys denies

20  the allegations of Paragraph 28.

21         29.     Eclipsys states that Paragraph 29 of the Complaint contains certain conclusions of law

22  to which an answer is not required, and respectfully refers the Court to the RSW-Emtek License for

23  the contents and legal effect thereof.  Eclipsys admits that a letter dated June 3, 2005, addressed to

24  Mr. Eugene Fife, Eclipsys's Chief Executive Officer, purportedly from Mr. Schaffer, contains the

25  statements ". . . we are terminating our Software License Agreement today.," and ". . . Eclipsys is

26  hereby instructed to . . . [p]rovide Revolutionary Software with copies of effective sublicense

27  agreements for all end users."  Except as expressly admitted herein, and to the extent any further

28  answer is required, Eclipsys denies the allegations of Paragraph 29.

30.     Eclipsys states that Paragraph 30 of the Complaint contains certain conclusions of law to which an answer is not required, and respectfully refers the Court to the RSW-Emtek License for the contents and legal effect thereof.  Eclipsys admits that a letter dated June 3, 2005, addressed to Mr. Eugene Fife, Eclipsys's Chief Executive Officer, purportedly from Mr. Schaffer, contains the statements ". . . we are terminating our Software License Agreement today.," and ". . . Eclipsys is hereby instructed to: 1) . . . return to Revolutionary Software all copies of the licensed software, revisions, documentation, and other proprietary material of Revolutionary Software in Eclipsys' possession, 2) Instruct the escrow agent . . . to release the source code."  Eclipsys admits that it has not returned "all copies of the licensed software, revisions, documentation, and other proprietary material" or "[i]nstruct[ed] the escrow agent . . . to release the source code."  Except as expressly admitted herein, and to the extent any further answer is required, Eclipsys denies the allegations of Paragraph 30.

31.     Eclipsys states that Paragraph 31 of the Complaint contains certain conclusions of law to which an answer is not required.  To the extent an answer is required, Eclipsys denies the allegations of Paragraph 31.

32.     Eclipsys states that Paragraph 32 of the Complaint contains certain conclusions of law to which an answer is not required, and respectfully refers the Court to the RSW-Emtek License for the contents and legal effect thereof.  To the extent that an answer is required, Eclipsys denies the allegations of paragraph 32.  Eclipsys admits that it received various letters between 2002 and March of 2005, and Eclipsys respectfully refers the Court to those documents for the content and legal effect thereof.  Except as expressly admitted herein, and to the extent any further answer is required, Eclipsys denies the allegations of Paragraph 32.

33.     Eclipsys states that Paragraph 33 of the Complaint contains certain conclusions of law to which an answer is not required, and respectfully refers the Court to the RSW-Emtek License for the contents and legal effect thereof.  Eclipsys admits that a letter dated March 1, 2005, addressed to Mr. Ruflin, purportedly from Mr. Schaffer, contains the statements ". . . issues remaining unresolved are: 1. unpaid late charges; 2. continued lack of monthly reporting; and 3. Eclipsys's redefinition of contract terms without permission from Revolutionary Software. Eclipsys is in material breach of the

10

Software License Agreement."  Eclipsys admits that a letter dated June 3, 2005, addressed to Mr.

Eugene Fife, purportedly from Mr. Schaffer, contains the statements ". . . we are terminating our

Software License Agreement today.  On March 1 and March 9, 2005, we wrote to Mr. Paul Ruflin, to

advise him that our company considers Eclipsys in material breach of our Software License

Agreement,"  and

> . . . Eclipsys is hereby instructed to: 1) Immediately discontinue use and distribution of
> the licensed software and return to Revolutionary Software all copies of the licensed
> software, revisions, documentation, and other proprietary material of Revolutionary
> Software in Eclipsys' possession. . . ,  3) Furnish Revolutionary Software with an
> accounting of all workstations . . . ,  4) Pay license fees of $30 for each workstation
> reported . . . .

Except as expressly admitted herein, and to the extent any further answer is required, Eclipsys denies

the allegations of Paragraph 33.

34.    Eclipsys states that Paragraph 34 of the Complaint contains certain conclusions of law

to which an answer is not required.  To the extent an answer is required, Eclipsys denies the

allegations of Paragraph 34.

**SECOND CAUSE OF ACTION:**
**BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**

35.    Paragraph 35 of the Complaint does not contain a charging allegation to which an

answer is required.  To the extent an answer is required, Eclipsys denies the allegations of Paragraph

35.

36.    Eclipsys states that Paragraph 36 of the Complaint contains certain conclusions of law

to which an answer is not required.  Eclipsys admits that Emtek entered into a written Software

License Agreement with Plaintiff, which is attached to the Complaint as Exhibit A.  Eclipsys admits

that on or about January 30, 1998, Emtek Healthcare Corporation, a subsidiary of Eclipsys, acquired

substantially all the assets of the Emtek Healthcare Division of Motorola, Inc.  Eclipsys respectfully

refers the Court to the Emtek-RSW License, the SDA and other exhibits attached to the Complaint

for the contents and legal effect thereof.  Except as expressly admitted herein, and to the extent any

further answer is required, Eclipsys denies the allegations of Paragraph 36.

37.     Eclipsys states that Paragraph 37 of the Complaint contains certain conclusions of law to which an answer is not required.  To the extent an answer is required, Eclipsys denies the allegations of Paragraph 37.

38.     Eclipsys states that Paragraph 38 of the Complaint contains certain conclusions of law to which an answer is not required.  To the extent an answer is required, Eclipsys denies the allegations of Paragraph 38.

39.     Eclipsys states that Paragraph 39 of the Complaint contains certain conclusions of law to which an answer is not required.  Except as expressly admitted herein, and to the extent any further answer is required, Eclipsys denies the allegations of Paragraph 39.

40.     Eclipsys states that Paragraph 40 of the Complaint is a conclusion of law to which an answer is not required.  To the extent an answer is required, Eclipsys denies the allegations of Paragraph 40.

41.     Eclipsys states that Paragraph 41 of the Complaint contains certain conclusions of law to which an answer is not required.  To the extent an answer is required, Eclipsys denies the allegations of Paragraph 41.

### THIRD CAUSE OF ACTION:
### COMMON COUNTS

42.     Paragraph 42 of the Complaint does not contain a charging allegation to which an answer is required.  To the extent an answer is required, Eclipsys denies the allegations of Paragraph 42.

43.     Eclipsys states that Paragraph 43 of the Complaint contains certain conclusions of law to which an answer is not required.  To the extent an answer is required, Eclipsys denies the allegations of Paragraph 43.

44.     Eclipsys states that Paragraph 44 of the Complaint contains certain conclusions of law to which an answer is not required.  To the extent an answer is required, Eclipsys denies the allegations of Paragraph 44.

## SEPARATE AND ADDITIONAL DEFENSES

### FIRST SEPARATE AND ADDITIONAL DEFENSE

The alleged causes of action in Plaintiff's Complaint, and each of them, fail to state facts sufficient to constitute a cause of action.

### SECOND SEPARATE AND ADDITIONAL DEFENSE

The alleged causes of action in Plaintiff's Complaint, and each of them, fail to state a claim against Eclipsys upon which relief can be granted.

### THIRD SEPARATE AND ADDITIONAL DEFENSE

Plaintiff's claims against Eclipsys are barred because the alleged causes of action, and each of them, are uncertain, ambiguous, and/or unintelligible.

### FOURTH SEPARATE AND ADDITIONAL DEFENSE

The alleged causes of action in Plaintiff's Complaint, and each of them, are barred because Plaintiff has failed to follow the dispute resolution procedures required by the Software Licensing Agreement.

### FIFTH SEPARATE AND ADDITIONAL DEFENSE

The alleged causes of action in Plaintiff's Complaint, and each of them, are barred, in whole or in part, because of failure of consideration.

### SIXTH SEPARATE AND ADDITIONAL DEFENSE

The alleged causes of action in Plaintiff's Complaint, and each of them, are barred, in whole or in part, because the consideration proffered by RSW was unlawful.

### SEVENTH SEPARATE AND ADDITIONAL DEFENSE

The alleged causes of action in Plaintiff's Complaint, and each of them, are barred, in whole or in part, because the Emtek-RSW License is an unconscionable contract.

### EIGHTH SEPARATE AND ADDITIONAL DEFENSE

The alleged causes of action in Plaintiff's Complaint, and each of them, are barred, in whole or in part, because Eclipsys's and Emtek's consent to the terms of the Emtek-RSW License were obtained through actual fraud.

### NINTH SEPARATE AND ADDITIONAL DEFENSE

The alleged causes of action in Plaintiff's Complaint, and each of them, are barred, in whole or in part, because Eclipsys's and Emtek's consent to the terms of the Emtek-RSW License were obtained through constructive fraud.

### TENTH SEPARATE AND ADDITIONAL DEFENSE

The alleged causes of action in Plaintiff's Complaint, and each of them, are barred, in whole or in part, because Eclipsys's and Emtek's consent to the terms of the Emtek-RSW License were obtained through mistake.

### ELEVENTH SEPARATE AND ADDITIONAL DEFENSE

The alleged causes of action in Plaintiff's Complaint, and each of them, are barred, in whole or in part, because there was no mutual consent to the terms of the Emtek-RSW License.

### TWELFTH SEPARATE AND ADDITIONAL DEFENSE

The alleged causes of action in Plaintiff's Complaint, and each of them, are barred, in whole or in part, because the Emtek-RSW License had an unlawful, impossible, or unascertainable object.

### THIRTEENTH SEPARATE AND ADDITIONAL DEFENSE

The Complaint and each claim for relief therein is barred by the applicable statutes of limitations, including but not limited to, California Code of Civil Procedure sections 337, 338, 343, and other applicable statutes of limitation.

### FOURTEENTH SEPARATE AND ADDITIONAL DEFENSE

The alleged causes of action in Plaintiff's Complaint, and each of them, are barred, in whole or in part, by reason of accord and satisfaction.

### FIFTEENTH SEPARATE AND ADDITIONAL DEFENSE

The alleged causes of action in Plaintiff's Complaint, and each of them, are barred, in whole or in part, by the statute of frauds, including, but not limited to, the provisions contained in California Civil Code section 1624.

### SIXTEENTH SEPARATE AND ADDITIONAL DEFENSE

The damages alleged in Plaintiff's Complaint were caused, if at all, by the acts or omissions of third parties, over whom Eclipsys exercised no degree of control.

**SEVENTEENTH SEPARATE AND ADDITIONAL DEFENSE**

Plaintiff is barred from recovery of some or any alleged damages because of and to the extent of Plaintiff's failure to mitigate its damages.

**EIGHTEENTH SEPARATE AND ADDITIONAL DEFENSE**

The alleged causes of action in Plaintiff's Complaint, and each of them, are barred as and to the extent that Eclipsys's performance of any obligations at issue was impossible due to the acts or omissions of others, and/or circumstances outside Eclipsys's control.

**NINETEENTH SEPARATE AND ADDITIONAL DEFENSE**

The alleged causes of action in Plaintiff's Complaint, and each of them, are barred as to and to the extent that Eclipsys's obligations, if any, were modified or excused.

**TWENTIETH SEPARATE AND ADDITIONAL DEFENSE**

Plaintiff's claims are barred, in whole or in part, because any conduct engaged in by Eclipsys has been reasonable, based upon independent, legitimate business and economic justifications.

**TWENTY-FIRST SEPARATE AND ADDITIONAL DEFENSE**

Plaintiff may not recover prejudgment interest because its Complaint does not state facts sufficient to justify an award of prejudgment interest.

**TWENTY-SECOND SEPARATE AND ADDITIONAL DEFENSE**

Plaintiff may not recover costs because its Complaint does not state a basis upon which costs can be awarded.

**TWENTY-THIRD SEPARATE AND ADDITIONAL DEFENSE**

The alleged causes of action in Plaintiff's Complaint, and each of them are barred to the extent they are based in any way on acts that were privileged or justified.

**TWENTY-FOURTH SEPARATE AND ADDITIONAL DEFENSE**

The alleged causes of action in Plaintiff's Complaint, and each of them, are barred, in whole or in part, by the doctrine of estoppel.

**TWENTY-FIFTH SEPARATE AND ADDITIONAL DEFENSE**

The alleged causes of action in Plaintiff's Complaint, and each of them, are barred, in whole or in part, by the doctrine of laches.

1

**TWENTY-SIXTH SEPARATE AND ADDITIONAL DEFENSE**

2      The alleged causes of action in Plaintiff's Complaint, and each of them, are barred, in whole

3  or in part, by the doctrine of waiver.

4

**TWENTY-SEVENTH SEPARATE AND ADDITIONAL DEFENSE**

5      The alleged causes of action in Plaintiff's Complaint, and each of them, are barred, in whole

6  or in part, by the doctrine of unclean hands.

7

## <u>COUNTERCLAIMS</u>

8

### **(Jury Trial Demanded)**

9      Defendant and Counterclaimant Eclipsys hereby alleges for its Counterclaims against Plaintiff

10  and Counterdefendant RSW ("Counterdefendant") as follows:

11      1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C.

12  § 1332.

13      2.      Venue is proper before this Court pursuant to 28 U.S.C. § 1391 because (a) the

14  Counterdefendant resides in this judicial district; (b) a substantial part of the events or omissions

15  giving rise to the claim occurred in this judicial district; and (c) Counterdefendant consented to the

16  jurisdiction of this Court.

17      3.      Defendant and Counterclaimant Eclipsys is a Delaware corporation with its

18  headquarters and principal place of business in Boca Raton, Florida.

19      4.      Eclipsys is informed and believes, and on that basis alleges, that Plaintiff and

20  Counterdefendant RSW is a California corporation with its headquarters and principal place of

21  business in Santa Cruz, California.  Upon information and belief, RSW was incorporated as

22  "Robinson Schaffer Wright, Inc." on or about April 18, 1989, and changed its name to

23  "Revolutionary Software, Inc." on or about January 15, 1992.  Throughout these Counterclaims,

24  "RSW" shall refer to Robinson Schaffer Wright, Inc. and/or Revolutionary Software, Inc. as

25  contextually appropriate.

26  **Rod Manis Develops /rdb and Creates Multinational Software**

27      5.      Eclipsys is informed and believes, and on that basis alleges, that beginning some time

28  prior to 1982, Rodney V. Manis III ("Rod Manis"), an individual residing in California and/or Texas

16

1  during the relevant time period, wrote and developed a relational data base management system for

2  Unix called /rdb.

3        6.     Eclipsys is informed and believes, and on that basis alleges, that Rod Manis continued

4  to work on /rdb throughout the '80s, periodically registering the copyrights for new versions of /rdb

5  with the United States Copyright Office.  Rod Manis registered release 4.0 of /rdb with the United

6  States Copyright Office on or about February 17, 1988.  On the Certificate of Copyright Registration

7  for /rdb release 4.0, Rod Manis is listed as the sole author of all code text.

8        7.     Eclipsys is informed and believes, and on that basis alleges, that on or about April 28,

9  1983, Rod Manis incorporated Multinational Software, Inc., a Texas Corporation ("Multinational"),

10  for the purpose of marketing and selling /rdb.

11  **RSW Licenses /rdb from Multinational**

12        8.     Upon information and belief, Rod Manis was Multinational's sole shareholder until he

13  died on or about June 1, 1988.  Pursuant to his Last Will and Testament, Rod Manis left all of his

14  property, real and personal, to his mother, Kathren Michele Lawrence Manis ("Michele Manis").

15  Upon information and belief, the assets that passed to Michele Manis after Rod Manis's death

16  included all of Rod Manis's rights to /rdb, all 100,000 shares of Multinational, and all of

17  Multinational's assets.  Upon information and belief, Michele Manis became president of

18  Multinational after Rod Manis's death.

19        9.     On or about April 1, 1989, Multinational entered into a license agreement (the

20  "Multinational-RSW License") pursuant to which Multinational granted to RSW a nontransferable

21  license to sell /rdb in combination with VISUAL-ENTRY ("ve"), a data entry/editing program

22  developed and owned by RSW.  A true and correct copy of the Multinational-RSW License is

23  attached hereto as Exhibit A.

24       10.    RSW admitted in response to discovery requests that the Multinational-RSW License

25  has not been amended or modified since April 1, 1989, and that RSW and Multinational have entered

26  into no additional agreements relating to, among other things, the licensing or ownership of /rdb.

27       11.    Section 7 of the Multinational-RSW License contained the following termination

28  provision:

If RSW shall breach this Agreement by failing to fulfill any of RSW's obligations under this Agreement, Multinational may, at any time, and in addition to any other remedies that Multinational may have, terminate this agreement and all licenses and rights granted to RSW under this Agreement.  The Agreement shall terminate . . . after Multinational gives RSW written notice specifying any such breach, unless within any period (if any) stated in said notice, all breaches shall have been remedied to Multinational's satisfaction.

**Multinational Terminates RSW's License**

12.     Eclipsys is informed and believes, and on that basis alleges, that a dispute arose between RSW and Multinational in or about June of 1990 regarding RSW's payment of royalties under the Multinational-RSW License.  The parties never resolved this dispute, and on or about September 5, 1990, Multinational sent RSW written notice specifying RSW's breaches of the Multinational-RSW License as required by Section 7 of the Multinational-RSW License.  RSW admitted in response to discovery requests that it never cured the breaches specified in Multinational's September 5, 1990 notice.

13.     Eclipsys is informed and believes, and on that basis alleges, that Michele Manis died on November 13, 1990.  Upon information and belief, Michele Manis's property, including the 100,000 shares of Multinational and all versions of /rdb authored by Rod Manis, passed to the Michele L. Manis Trust (the "Trust").

14.     Eclipsys is informed and believes, and on that basis alleges, that RSW stopped paying royalties to Multinational after the termination of the Multinational-RSW License.  RSW did not, however, stop using or selling /rdb.  To the contrary, Counterdefendant took advantage of the untimely death of /rdb's creator, and that of his mother soon thereafter, to pass itself off as the owner of /rdb.  Since the death of Michele Manis and the termination of the Multinational-RSW License, Counterdefendant has continued to sell /rdb without the knowledge or consent of Multinational or the Trust.  Upon information and belief, Counterdefendant has received approximately $1 million from unauthorized sales of /rdb – without disclosing this fact to Multinational or to the Trust, and without paying a penny to /rdb's rightful owners.

**RSW Purports to License /rdb to Emtek**

15.     Eclipsys is informed and believes, and on that basis alleges, that Counterdefendant, through repeated misrepresentations and omissions, misled representatives of Emtek Healthcare

18

Systems ("Emtek") into believing that RSW had the right to grant Emtek a license to use, reproduce, market, and distribute /rdb.  On or about February 8, 1993 Counterdefendant induced Emtek to enter into a Software Licensing Agreement (the "RSW-Emtek License") pursuant to which RSW purported to grant to Emtek a non-transferable non-exclusive worldwide right and license to use, reproduce, market, and distribute /rdb.  In return for the rights to /rdb purportedly licensed under the agreement, and in reliance upon the false representations of Counterdefendant, Emtek agreed to pay RSW an initial non-refundable fee of $30,000 and a per-copy licensing fee of $30.00 "for each copy installed, given away or otherwise distributed" by Emtek.

16.     Section V of the RSW-Emtek License ("WARRANTY") contains the following representation by RSW:  "[RSW] warrants that it has the rights to enter into this Agreement and to grant the rights described herein."

17.     Section X.E. of the RSW-Emtek License ("OWNERSHIP RIGHTS") contains the following representation by RSW:  "The Licensed Software and all copies thereof are proprietary to [RSW].  All applicable rights to patents, copyrights, trademarks and trade secrets in the Licensed Software . . . are and shall remain in [RSW]."

18.      Emtek relied on Counterdefendant's representation that it had the rights to license /rdb in entering into the RSW-Emtek License.

19.     Emtek relied on RSW's warranties, as set forth in the RSW-Emtek License, and on the continuing misrepresentations and omissions of Counterdefendant, in paying license fees to RSW for each copy of /rdb installed by Emtek.  By January of 1998, Emtek had paid a total of $223,096 to RSW for the right to use, reproduce, market, and distribute /rdb.

**Eclipsys Acquires Emtek**

20.     On or about January 20, 1998, Eclipsys acquired Emtek, and Emtek's rights and obligations under the RSW-Emtek License.  In purchasing the assets of Emtek and accepting assignment of Emtek's rights and obligations under the RSW-Emtek License, Eclipsys relied on Counterdefendant's representations and warranties that RSW had all rights necessary to grant the rights licensed thereunder.

21.     Eclipsys relied on Counterdefendant's warranties and representations in paying license fees to RSW for each copy of /rdb installed by Eclipsys.  Since February of 1998, Eclipsys has paid a total of $61,706 to RSW for the right to use, reproduce, market, and distribute /rdb.

**The Instant Lawsuit**

22.     On or about June 22, 2005, RSW filed a lawsuit against Eclipsys in the Superior Court of the State of California for the County of Santa Cruz, alleging, *inter alia*, that Eclipsys breached the RSW-Emtek License by failing to pay sufficient royalties for Eclipsys's distribution of /rdb.  Evan Schaffer, RSW's president, verified the allegations in that complaint under penalty of perjury.  Eclipsys removed the case to the United States District Court for the Northern District of California on August 2, 2005.

23.     In its original complaint, RSW alleged that, "[s]ince its inception, [RSW] has developed, copyrighted, supported, sold, and licensed software products for business, scientific, educational, and government applications.  One such product is a unique, copyrighted software program, '/rdb,' (pronounced 'slash-r-d-b')."  RSW failed to allege or otherwise disclose that Rod Manis, not RSW, was the author and copyright-owner of /rdb.  RSW repeated these allegations and omissions in its First Amended Complaint, filed on or about September 19, 2006, and in its Second Amended Complaint, filed on or about April 26, 2007.

24.     On or about July 26, 2006, Eclipsys served RSW with Requests for Production of Documents pursuant to Federal Rule of Civil Procedure 34.  Among the documents requested by Eclipsys at that time were all documents relating to /rdb's development and ownership, and any negotiations, agreements, contracts, or other business arrangements of which /rdb was a subject.

25.     On or about October 27, 2006, RSW produced documents responsive to Eclipsys's Requests for Production of Documents.  Absent from RSW's production were any documents referring or relating to Multinational.

26.     On or about April 2, 2007, as part of a "supplemental" production, RSW produced, for the first time, documents referring or relating to Multinational, including copies of the Multinational-RSW License and the September 5, 1990 letter terminating that agreement.

## FIRST CAUSE OF ACTION

### (Fraud)

27.     Eclipsys repeats and realleges the allegations of paragraphs 1 through 26 inclusive, of the Counterclaims, as though fully set forth herein.

28.     As alleged herein, Counterdefendant repeatedly and falsely represented, expressly and by implication and omission, that RSW had the right to grant a license to use, reproduce, market and distribute /rdb, and concealed the true nature and extent of RSW's rights (or lack thereof) with respect to /rdb, in order to induce Emtek and Eclipsys to pay RSW license fees for rights RSW did not have to convey.

29.     At the time Counterdefendant made these false statements or suppressed the true facts, Counterdefendant knew that its statements or omissions were false and misleading and intended to induce Emtek and Eclipsys to alter their positions in reliance on these misstatements and omissions. At the time Counterdefendant made these false statements or suppressed the true facts, it did so with knowledge that Emtek and Eclipsys would act in reliance thereupon.

30.     In late 1992 and early 1993, when RSW and Emtek were negotiating the RSW-Emtek License, Counterdefendant knew that /rdb was authored and owned by Rod Manis and Multinational. Counterdefendant also knew that the Multinational-RSW license granting RSW the right to use, modify, enhance, market, or sell /rdb had been terminated in or around September 1990, and that RSW had not paid royalties to Multinational for sales of /rdb since September 1990.  In short, Counterdefendant knew, at the time that it induced Emtek to enter into the RSW-Emtek License, that RSW did not have the right to grant such a license.

31.     But for Counterdefendant's representations and warranties that RSW had the rights necessary to grant a license to use, reproduce, market and distribute /rdb, on which Emtek reasonably and actually relied in good faith, Emtek would not have entered into the RSW-Emtek License.

32.     But for Counterdefendant's representations and warranties that RSW had the rights necessary to grant a license to use, reproduce, market and distribute /rdb, on which Emtek reasonably and actually relied in good faith, Emtek would not have entered into the October 1995 Amendment to the RSW-Emtek License.

33.     But for Counterdefendant's representations and warranties that RSW had the rights necessary to grant a license to use, reproduce, market and distribute /rdb, on which Emtek reasonably and actually relied in good faith, Emtek would not have paid $223,096 to RSW.

34.     But for Counterdefendant's representations and warranties that RSW had the rights necessary to grant a license to use, reproduce, market and distribute /rdb, on which Emtek reasonably and actually relied in good faith, Emtek would not have assigned its rights and obligations under the RSW-Emtek License to Eclipsys.

35.     But for Counterdefendant's representations and warranties that RSW had the rights necessary to grant a license to use, reproduce, market and distribute /rdb, on which Eclipsys reasonably and actually relied in good faith, Eclipsys would not have acquired Emtek's rights and obligations under the RSW-Emtek License.

36.     But for Counterdefendant's representations and warranties that RSW had the rights necessary to grant a license to use, reproduce, market and distribute /rdb, on which Eclipsys reasonably and actually relied in good faith, Eclipsys would not have paid $61,706 to RSW.

37.     Counterdefendant, aware that Emtek would not knowingly pay RSW for rights RSW did not have, intentionally misrepresented to Emtek the nature and extent of RSW's rights to /rdb in order to induce Emtek to enter into the RSW-Emtek License and pay RSW license fees thereunder.

38.     Counterdefendant, knowing that Eclipsys would not acquire Emtek's obligations under the RSW-Emtek License Agreement if Eclipsys knew that Counterdefendant's representations and warranties were false, failed to disclose to Eclipsys the true nature and extent of RSW's rights to /rdb in order to induce Eclipsys to accept assignment of Emtek's obligations under the RSW-Emtek License.

39.     Counterdefendant, knowing that Eclipsys would have a defense to RSW's claims if Eclipsys knew the true nature and extent of RSW's rights to /rdb, continued to conceal Counterdefendant's deception and the true nature and extent of RSW's rights to /rdb for nearly two years while Eclipsys defended this lawsuit on other grounds, at considerable expense to Eclipsys.

40.     As a direct and proximate result of Counterdefendant's false and misleading statements and suppression of the truth, Eclipsys has been and continues to be injured in ways

including, but not limited to, its payment of license fees to RSW for rights that RSW did not have to convey and its expenditure of substantial sums to defend against claims brought by RSW under the terms of an agreement RSW knew to be unenforceable.

41.     Counterdefendant engaged in the misrepresentations and suppressions alleged herein with malice, oppression, or fraud, such as to warrant the imposition of punitive and exemplary damages in an amount to be determined at trial.

WHEREUPON, Eclipsys prays for judgment as hereinafter set forth.

## SECOND CAUSE OF ACTION

### (Negligent Misrepresentation)

42.     Eclipsys repeats and realleges the allegations of paragraphs 1 through 41 inclusive, of the Counterclaims, as though fully set forth herein.

43.     As alleged herein, Counterdefendant repeatedly and falsely represented, expressly and by implication and omission, that RSW had the right to grant a license to use, reproduce, market and distribute /rdb, and failed to disclose the true nature and extent of RSW's rights (or lack thereof) with respect to /rdb, in order to induce Emtek and Eclipsys to pay RSW license fees for rights RSW did not have to convey.

44.     At the time Counterdefendant made these false statements or omissions, Counterdefendant had no reasonable ground for believing that the information it provided was true and complete.  Counterdefendant failed to correct these false statements and omissions even though it know or should have known the true facts based on information available to it at that time. Counterdefendant provided this false and misleading information in a commercial setting for a business purpose, having superior knowledge over Emtek or Eclipsys of the true facts and circumstances.

45.     Counterdefendant intended to induce Emtek and Eclipsys to alter their positions in reliance on these misstatements and omissions.  At the time Counterdefendant made these false statements and material omissions, Counterdefendant did so with knowledge that Emtek and Eclipsys would act in reliance thereupon.

46.     Eclipsys (and Emtek before it) reasonably and actually relied in good faith on Counterdefendant's misstatements and omissions, as set forth above.  Had Counterdefendant not misrepresented or withheld the true facts, Emtek would not have signed the RSW-Emtek License, Eclipsys would not have accepted Emtek's obligations under that License, and neither Emtek nor Eclipsys would have paid license fees to RSW thereunder.

47.     As a result of the aforementioned misrepresentations and omissions, Eclipsys has been and continues to be injured in ways including, but not limited to, its payment of license fees to RSW and its expenditure of substantial sums to defend against RSW's claims under the RSW-Emtek License.

WHEREUPON, Eclipsys prays for judgment as hereinafter set forth.

## **THIRD CAUSE OF ACTION**

### **(Mistake)**

48.     Eclipsys repeats and realleges the allegations of paragraphs 1 through 47 inclusive, of the Counterclaims, as though fully set forth herein.

49.     Eclipsys believes that Counterdefendant is responsible for the fraud and negligent misrepresentation described above.  If, however, any element of those causes of action is not satisfied, Eclipsys pleads mistake as an alternative cause of action.

50.     The consent of Emtek (and its successor-in-interest, Eclipsys) to the RSW-Emtek License and related agreements was not real, mutual, or free in that it was obtained through mistake as herein described.

51.     Emtek entered into the RSW-Emtek License and related agreements under mistakes of fact material to those agreements, in that it believed, *inter alia*, that RSW had the right to grant a license to use, reproduce, market and distribute /rdb.

52.     Eclipsys accepted Emtek's obligations under the RSW-Emtek License and related agreements, and continued to perform under those agreements, under mistakes of fact material to those agreements, in that it believed, *inter alia*, that RSW had the right to grant a license to use, reproduce, market and distribute /rdb.

53.    Counterdefendant caused and/or was aware of the above-referenced mistakes of Emtek and Eclipsys and unfairly used these mistakes to take advantage of Eclipsys. Counterdefendant failed to correct its misstatements and material omissions regarding RSW's rights to /rdb even though Counterdefendant had additional information to correct those statements and omissions.  Counterdefendant provided misleading information and withheld information having superior knowledge over Eclipsys of the true facts and circumstances.

54.    The aforementioned mistakes had a material effect on the exchange of performances adverse to Eclipsys, because Emtek and Eclipsys paid significant sums of money over a period of fourteen years for rights that RSW did not have to convey in the first place.

55.    Had Emtek known the truth, Emtek would not have signed the RSW-Emtek License, Eclipsys would not have accepted Emtek's obligations under that License, neither Emtek nor Eclipsys would have paid license fees to RSW thereunder, and RSW would not have sued Eclipsys for breach of the RSW-Emtek License.

56.    The effect of the aforementioned mistakes is such that enforcement of the contract would be unconscionable.

57.    As a result of the aforementioned mistakes known to and encouraged by Counterdefendant, Eclipsys has been and continues to be injured in ways including, but not limited to, its payment of license fees to RSW and its expenditure of substantial sums to defend against RSW's claims under the RSW-Emtek License.

WHEREUPON, Eclipsys prays for judgment as hereinafter set forth.

## FOURTH CAUSE OF ACTION

### (Violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.*)

58.    Eclipsys repeats and realleges the allegations of paragraphs 1 through 57 inclusive, of the Counterclaims, as though fully set forth herein.

59.    Eclipsys seeks relief against Counterdefendant for unfair competition and business practices pursuant to California Business and Professions Code §§ 17200 *et seq.*  Since in or about September 1990, Counterdefendant repeatedly and continuously has engaged in unlawful and/or

unfair business acts or practices within the State of California as set forth herein, including without limitation:

    a)  failing to disclose to Multinational or the Trust that RSW was selling /rdb after Multinational terminated the Multinational-RSW License;

    b)  repeatedly representing to the public that RSW is the owner of /rdb, thus asserting an alleged ownership right that it does not possess;

    c)  selling and licensing /rdb to over 1000 individuals and entities, including Emtek and Eclipsys, when, in fact, RSW did not own or have the right to sell or license /rdb because, as Counterdefendant knew or should have known, RSW's license to use or sell /rdb terminated in 1990;

    d)  knowingly causing Emtek and Eclipsys to enter into sublicenses with customers in reliance on the false representations and warranties of Counterdefendant; and

    e)  threatening to sue and suing Eclipsys to recover additional monies under the RSW-Emtek License when Counterdefendant knew or should have known that it had no right to collect royalties under that agreement.

60.     Counterdefendant's aforementioned conduct harms competition because, among other things, it raises the prices of relational database software programs and increases the costs of doing business in the relational database software market.  By untruthfully representing to the market that it is the rightful owner and/or has the right to license or sell /rdb, RSW unlawfully derived revenue of approximately $1 million with which it was able to more effectively compete in the market for relational database software.

61.     Eclipsys itself has lost almost $300,000 over the course of the last 17 years as a direct result of Counterdefendant's unlawful and unfair business practices, not counting the monetary and business costs of defending against RSW's baseless lawsuit.

62.     Eclipsys has no adequate remedy at law to prevent RSW's continued unlawful and unfair business practices.

63.     Unless RSW is enjoined from engaging in these unlawful and unfair business practices, Eclipsys will continue to suffer irreparable harm to its business and reputation.

WHEREUPON, Eclipsys prays for judgment as hereinafter set forth.

**FIFTH CAUSE OF ACTION**

**(Breach of Contract)**

64.    Eclipsys repeats and realleges the allegations of paragraphs 1 through 63 inclusive, of the Counterclaims, as though fully set forth herein.

65.    Section XIII.A.1. of the RSW-Emtek License requires that Eclipsys and RSW "work closely and in a spirit of cooperation.  Problem resolution will be handled as standard operating procedure and every effort will be made by the parties to resolve such problems as part of the normal course of business."  Section XIII.A.2. sets forth the specific procedure the parties must follow before bringing litigation for breach of the RSW-Emtek License:

> If any dispute arises under this Agreement and is not settled promptly in the ordinary course of business, the parties shall seek to resolve any such dispute between them, **first by negotiating promptly with each other in good faith in face-to-face negotiations.**  These face-to-face negotiations shall be conducted by the respective designated senior management representative of each parties:  for EMTEK, the Chief Financial Officer, for LICENSOR, the President.  If these parties are unable to resolve the dispute between them within ten (10) business days (or such period as the parties shall otherwise agree) after these face-to-face negotiations then any such disputes shall be referred in writing to the next designated senior management representative of each party . . ..

(emphasis added).

66.    Section 6 of the Software Deposit Agreement between Emtek and RSW (Exhibit D to the Second Amended Complaint) incorporates by reference the dispute resolution provisions of the RSW-Emtek License.

67.    RSW has not worked closely and in a spirit of cooperation with Eclipsys.  Evan Schaffer, RSW's president, never engaged or attempted to engage in face-to-face negotiations with Eclipsys's Chief Financial Officer or with Eclipsys's President.  To the contrary, Schaffer scrupulously avoided any means of negotiation other than written demands.  To this day, no officer or employee of RSW has engaged, agreed to engage, or attempted to engage any officer of Eclipsys in face-to-face negotiations or otherwise made any good faith attempt to resolve disputes between RSW and Eclipsys.

68.    As a result of RSW's willful failure to engage in face-to-face negotiations with Eclipsys or otherwise follow the dispute resolution procedures in the RSW-Emtek License, RSW has

1   materially breached Section XIII of the RSW-Emtek License and Section 6 of the Software Deposit

2   Agreement.

3         69.     Section V.A. of the RSW-Emtek License contains the following representation and

4   warranty of RSW:  "LICENSOR warrants that it has the rights necessary to enter into this Agreement

5   and to grant the rights described herein."  At the time that RSW made that representation and

6   warranty, and at all times since, RSW did *not* have the rights necessary to enter into the Emtek-RSW

7   License or to grant the rights described therein.

8         70.     As a result of RSW's false and misleading representations, RSW has materially

9   breached Section V of the RSW-Emtek License

10         71.     Eclipsys has performed all contractual duties and obligations legally required of it

11   under the RSW-Emtek License and the Software Deposit Agreement.  Eclipsys is excused from

12   complying with the dispute resolution procedures in Section XIII of the RSW-Emtek License and

13   Section 5 of the Software Deposit Agreement by virtue of RSW's own material breaches of those

14   agreements, including of Sections XIII and 5 thereof, as described herein.

15         72.     As a result of RSW's material breaches of the RSW-Emtek License and the Software

16   Deposit Agreement, Eclipsys has suffered damages in an amount to be proven at trial, including

17   payment of license fees in the amount of $284,802.

18         WHEREUPON, Eclipsys prays for judgment as hereinafter set forth.

19   **SIXTH CAUSE OF ACTION**

20   **(Breach of Covenant of Good Faith and Fair Dealing)**

21         73.     Eclipsys repeats and realleges the allegations of paragraphs 1 through 72 inclusive, of

22   the Counterclaims, as though fully set forth herein.

23         74.     By way of the fraudulent and unfair conduct alleged above, Counterdefendant unfairly

24   interfered with Eclipsys's right to receive the benefits of the RSW-Emtek License, and to freely,

25   fairly, and lawfully acquire the rights to a relational database software program suitable for its needs

26   through an open and fair arm's-length negotiation with the rightful owner of such software.

27

28

28

75.     As a result of RSW's breaches of the covenant of good faith and fair dealing, Eclipsys has suffered damages in an amount to be proven at trial, including payment of license fees in the amount of $284,802.

WHEREUPON, Eclipsys prays for judgment as hereinafter set forth.

### PRAYER FOR RELIEF

WHEREFORE, Defendant and Counterclaimant Eclipsys respectfully requests that this Court grant the following relief against Plaintiff and Counterdefendant RSW and those persons or entities in active concert or participation with RSW:

1.     That RSW take nothing by its Complaint;

2.     On Eclipsys's First Cause of Action:

a.     Any and all such equitable relief as is necessary to return Eclipsys and its customers to the position in which they would have been but for Counterdefendant's fraudulent conduct, and to prevent any further harm or damage to Eclipsys or its customers arising from their reliance upon the misrepresentations and omissions of Counterdefendant;

b.     Damages in an amount to be determined at trial, but in no event less than the amount Eclipsys paid to RSW as a result of Counterdefendant's fraudulent conduct.

c.     All of Eclipsys's fees, costs and expenses involved in defending RSW's claims under the RSW-Emtek License;

d.     Punitive damages, as appropriate;

e.     An award of interest on all amounts expended by and damages due Eclipsys;

f.     An award of attorneys' fees and costs reasonably incurred by Eclipsys in connection with the prosecution of these Counterclaims; and

g.     Such other relief as this Court deems just and proper.

3.     On Eclipsys's Second Cause of Action:

a.     Any and all such equitable relief as is necessary to return Eclipsys and its customers to the position in which they would have been but for

1        Counterdefendant's negligent misrepresentation, and to prevent any further harm

2        or damage to Eclipsys or its customers arising from their reliance upon the

3        misrepresentations and omissions of Counterdefendant;

4    b.    Damages in an amount to be determined at trial, but in no event less than the

5        amount Eclipsys paid to RSW as a result of Counterdefendant's negligent

6        misrepresentation;

7    c.    All of Eclipsys's fees, costs and expenses involved in defending RSW's claims

8        under the RSW-Emtek License;

9    d.    An award of interest on all amounts expended by and damages due Eclipsys;

10    e.    An award of attorneys' fees and costs reasonably incurred by Eclipsys in

11        connection with the prosecution of these Counterclaims; and

12    f.    Such other relief as this Court deems just and proper.

13    4.    On Eclipsys's Third Cause of Action:

14    a.    Any and all such equitable relief as is necessary to return Eclipsys and its

15        customers to the position in which they would have been but for Eclipsys's

16        mistake, and to prevent any further harm or damage to Eclipsys or its customers

17        arising from that mistake;

18    b.    Damages in an amount to be determined at trial, but in no event less than the

19        amount Eclipsys paid to RSW as a result of that mistake;

20    c.    All of Eclipsys's fees, costs and expenses involved in defending RSW's claims

21        under the RSW-Emtek License;

22    d.    An award of interest on all amounts expended by and damages due Eclipsys;

23    e.    An award of attorneys' fees and costs reasonably incurred by Eclipsys in

24        connection with the prosecution of these Counterclaims; and

25    f.    Such other relief as this Court deems just and proper.

26    5.    On Eclipsys's Fourth Cause of Action:

27    a.    Any and all such equitable relief as is necessary to return Eclipsys and its

28        customers to the position in which they would have been but for

ANSWER AND COUNTERCLAIMS OF DEFENDANT ECLIPSYS        CASE NO. C-05-03127 JW

1    Counterdefendant's unfair business practices, and to prevent any further harm or

2    damage to Eclipsys or its customers arising from their reliance upon the

3    misrepresentations and omissions of Counterdefendant;

4    b.    Restitutionary damages in an amount to be determined at trial, but believed to be

5    approximately $1,000,000, covering damages including but not limited to the

6    unjust enrichment of Counterdefendant resulting from its unlawful, unfair and

7    fraudulent business acts and practices in violation of California Unfair

8    Competition Law (Bus. & Prof. Code Section 17200, *et seq.*);

9    c.    An award of interest on all amounts expended by and damages due Eclipsys;

10    d.    An award of attorneys' fees and costs reasonably incurred by Eclipsys in

11    connection with this dispute; and

12    e.    Such other relief as this Court deems just and proper.

13    6.    On Eclipsys's Fifth Cause of Action:

14    a.    Damages in an amount sufficient to compensate Eclipsys for all harm flowing

15    from RSW's breaches of the RSW-Emtek License and Software Deposit

16    Agreement;

17    b.    An award of interest on all damages due Eclipsys; and

18    c.    Such other relief as this Court deems just and proper.

19    7.    On Eclipsys's Sixth Cause of Action:

20    a.    Damages in an amount sufficient to compensate Eclipsys for all harm flowing

21    from RSW's breaches of the Covenant of Good Faith and Fair Dealing;

22    b.    An award of interest on all damages due Eclipsys; and

23    c.    Such other relief as this Court deems just and proper.

24

25

26

27

28

1

## **DEMAND FOR JURY TRIAL**

2

Defendant and Counterclaimant Eclipsys hereby requests trial by jury of this matter.

3   DATED:  May 18, 2007                    GIBSON, DUNN & CRUTCHER LLP
                                            DENIS R. SALMON
4                                           MICHAEL B. SMITH
                                            JOSEPH W. GUZZETTA

5

6
                                            By:_____/s/_____
7                                                    Michael B. Smith

8                                           Attorneys for Defendant
                                            ECLIPSYS CORPORATION
9

10

11   100215188_6.DOC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT A

## SOFTWARE LICENSING AGREEMENT

This Software Licensing Agreement is made this first day of April, 1989, by and between MULTINATIONAL SOFTWARE, INC., a Texas corporation with its principal place of business located at 733 South Grove, Redlands, California 92374 (hereinafter "Multi-national"), and ROBINSON SCHAFFER WRIGHT, a California Corpora-tion with its principal place of business located at 711 Califor-nia Street, Santa Cruz, California 95060 (hereafter "RSW"). This agreement incorporates all previous oral and written agreements made beween Multinational and RSW and is understoond by both par-ties to be the sole agreement existing between the parties. Any subsequent modification of this agreement must be in writing and signed by both parties.

WHEREAS, Multinational has developed and owns the rights to /rdb, a relational data base management system for UNIX and UNIX licensed variants; and

WHEREAS, RSW is in the business of developing and/or acquiring software for sale or resale, either alone or as part of a software "package," to various entities, whether business, scientific, or otherwise; and has the means for making sales of Multinational's /rdb to such entities by virtue of its business and computer industry contacts; and has made enhancements to /rdb, including the coupling of /rdb to VISUAL-ENTRY (ve), a data entry/editing program developed and owned by RSW;

NOW, THEREFORE, in consideration of the mutual covenants, conditions, and consideration herein, the parties agree as fol-lows:

1. <u>License</u>:  Multinational grants to RSW a nontransfer-able license to use, modify, enhance, market, and sell binary or object code versions of /rdb in the UNIX computer system market in all areas of the world. Further, Multinational grants to RSW a nontransferable license to sell or otherwise distribute source code versions of /rdb in all areas of the world but such sales or distribution must be approved in writing by Multinational prior to the sale or distribution.

onexclusive

2. <u>Receipt of Program</u>:  RSW hereby acknowledges that as of the date of its signing of this Agreement, RSW has already received from Multinational machine-readable and -usable copies of /rdb sufficiently complete so as to enable RSW to enjoy all of its rights under this Agreement.

3. <u>Name of /rdb</u>:  Multinational hereby grants to RSW the right to market, offer for sale, and sell /rdb under a name of RSW's choosing provided that on all documentation, which includes manuals, tutorials, and other such written materials, ack-nowledgement is given to the name /rdb in a manner and typeface

RS007447

size so as to be reasonably recognizable by the reader of the
documentation.

　　　4.  Confidentiality:  RSW shall hold /rdb in confidence
and shall not disclose /rdb, including the methods or concepts
utilized therein, to anyone, except to employees or customers
signing a confidentiality or nondisclosure agreement with RSW
binding such employee or customer to hold /rdb in confidence and
allowing disclosure only where such employee or customer obtains
a similarly worded and signed agreement not to disclose /rdb.

　　　The use or presence of any copyright or other legend or
notice by RSW shall not be deemed to imply that any part of /rdb
has been published, has been placed in the public domain, or has
removed the obligation of RSW to hold /rdb in confidence and not
to disclose /rdb except as immediately noted above.

　　　5.  Royalties:
　　　(a)  RSW agrees that in consideration for the grant-
ing by Multinational to RSW of the /rdb license herein, RSW will
pay to Multinational royalties on RSW's net sales of /rdb and
RSW's variant(s) thereof according to the following schedule:

　　　　A fifty percent (50%) royalty rate on net sales of /rdb
　　　　will apply to all sales of /rdb by RSW.

　　　(b)  The term "net sales" shall mean the gross amount
of sales by RSW of /rdb and RSW's variant(s) thereof that are
actually collected by RSW from its customers.  Net sales shall
exclude any returns, credits, refunds, promotional and advertis-
ing allowances, and sales or use taxes.
　　　(c)  In the event that RSW sells /rdb and/or RSW's
variant(s) thereof, as part of a software package containing
other computer programs, the royalty due to Multinational by RSW
for its sales of such a package shall be calculated by applying
the royalty schedule set forth in Paragraph 5(a) of this Agree-
ment to the percentage price of /rdb and/or RSW's variant(s) in
such software package.
　　　For purposes of this Agreement, "percentage price"
shall be calculated by dividing the list price of /rdb or RSW's
variant(s) thereof by the sum of the list prices of all computer
programs included in the software package and multiplying the
result thereof by the list or negotiated price of the software
package itself.  It is understood that when Multinational's /rdb
and RSW's data entry/editing program, VISUAL-ENTRY (ve), are com-
bined by RSW and sold as a single product by RSW, the list prices
and percentage prices of /rdb and ve shall be considered equal to
each other when determining the contribution of /rdb and ve to
the combined product sold by RSW.
　　　RSW agrees that all computer program(s) combined with
/rdb and/or RSW's variant(s) thereof shall be reasonably priced
and that in the event of an unreasonable list price of such other
computer program(s), Multinational shall be entitled to royalties

Page 2 of 5

RS007448

on the list, not percentage, price of /rdb and RSW's variant(s) thereof for each sale by RSW of such software packages.

(d)    Within thirty (30) days after the end of each calendar year quarter during the term hereof, RSW shall prepare a statement showing its gross sales and net sales of /rdb and RSW's variant(s) thereof and the amount of the royalty due to Multinational, together with a check for the amount of such royalty. The statements and checks in payment of any sums shown to be due thereby shall then be immediately forwarded to Multinational at its address of 733 South Grove, Redlands, Calfornia 92374.

(e)    Multinational shall have access to and the right to review the books and records, whether computer generated and stored or otherwise, of RSW with respect to determining the gross and net sales by RSW of /rdb and RSW's variant(s) thereof, and the amount of any royalty due thereby to Multinational.  Any such review shall be at the sole cost and expense of Multinational unless said review reveals an arrearage or deficiency in royalty payments by RSW to Multinational, in which case RSW shall bear the full cost of the review regardless of whether such arrearage or deficiency is negligent or intentional.

6.    Enhancements:
(a)    RSW agrees that Michele Manis of Multinational Software, Inc., shall be allowed by RSW to do /rdb and database enhancements on RSW's computer(s).  Any enhancements resulting therefrom shall be equally available to both Multinational and RSW, and Michele Manis and/or Multinational may retrieve at any time a copy of the /rdb originally provided by Multinational to RSW including any and all such enhancements for sale by Multinational to other parties and/or for Multinational's and Michele Manis' own use.  RSW agrees that it will maintain separately and distinctly from each other /rdb and RSW's variant(s) thereof on its computer equipment in order that the purposes of this Paragraph may be accomplished.

(b)    Those enhancements to /rdb or RSW's variant(s) thereof created without the participation or aid of Michele Manis and/or Multinational are the sole property of RSW and may not be sold by Multinational without RSW's prior approval and agreement. Such enhancements, however, shall be given to Michele Manis and Multinational for their own use.

7.    Termination:
(a)    This Agreement shall become effective on the date signed on behalf of Multinational and RSW and shall remain in effect until terminated.

(b)    Exclusive of the confidentiality/nondisclosure provisions of Paragraph 4, any continuing royalty statements and payments due under Paragraph 5, and the record review rights of Multinational pursuant to Paragraph 5(e), this Agreement and the license created thereby may be terminated after ten years by giving ninety (90) days prior written notice of such termination to the other party.

RS007449

(c)   If RSW shall breach this Agreement by failing to fulfill any of RSW's obligations under this Agreement, Multinational may, at any time, and in addition to any other remedies that Multinational may have, terminate this Agreement and all licenses and rights granted to RSW under this Agreement.   The Agreement shall terminate, subject to the exclusions specified in Paragraph 7(b) above, after Multinational gives RSW written notice specifying any such breach, unless within any period (if any) stated in said notice, all breaches shall have been remedied to Multinational's satisfaction.

(d)   This Agreement may also be terminated by mutual written agreement of the parties hereto.

8.   <u>Indemnification</u>:  RSW agrees to indemnify and hold Multinational and Michele Manis, its and their agents and employees, free and harmless from and against any claims, suits, causes of action, or legal proceedings (including any governmental proceeding) that may be brought against RSW and/or Multinational and/or Michele Manis, arising out of the manufacture, sale, distribution, and/or use by RSW of /rdb or its variant(s) thereof.

9.   <u>Limited Warranty</u>:  RSW understands that, except as expressly provided herein, Multinational makes no representations or warranties, expressed or implied.  By way of example but not limitation, except as provided herein, Multinational makes no representations or warranties of merchantability and/or fitness for any particular purpose, or that the use of /rdb will not infringe any patent, copyright, trademark, service mark or other proprietary right.  Multinational shall not be held to any liability with respect to any claim by RSW or a third party on account of or arising from the use of /rdb.  In no event shall Multinational be liable for any special, indirect or consequential or punitive damages for any reason or for lost profits or any damages resulting from errors or defects in /rdb.

10.   <u>Arbitration</u>:  Any controversy or claim arising out of or relating to this Agreement, or breach thereof, shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.  Such discovery as may be conducive, in the arbitrator(s)' opinion, to the interests of justice and the most efficacious disposition of any controversy or claim under this Agreement, may be ordered by the arbitrator(s) for production prior to the actual date of arbitration.

11.   <u>Applicable Law</u>:  This Agreement shall be construed in accordance with the laws of the State of California.

12.   <u>Enforceability of Provisions</u>:  In the event that any provision of this Agreement shall be held invalid, illegal, or unenforceable, such determination shall not vitiate the legality

Page 4 of 5

RS007450

and enforceability of the remaining provisions of this Agreement,
nor shall the same be affected or impaired thereby.

  13.  <u>Notices</u>:  All notices and other communications
required to be served under this Agreement shall be in writing,
by certified or registered mail, return receipt requested, and
shall be deemed to have been served on the respective parties
hereto on the date of mailing at the addresses set forth below:

          To RSW:              Robinson Schaffer Wright
                               711 California Street
                               Santa Cruz, California  95060

          To Multinational:    Multinational Software, Inc.
                               733 South Grove
                               Redlands, California 92374

     IN WITNESS WHEREOF, the parties have executed this Agree-
ment on the date first written above.


ROBINSON SCHAFFER WRIGHT              MULTINATIONAL SOFTWARE, INC.

By _____           By _____
Evan Schaffer, President             Michele Manis, President


                              74-2271991

                              MultiNational's
                              EIN

RS007451